CELIA E. DOHERTY, Appellant, v. CHARLES DOHERTY, Respondent.

St. Louis Court of Appeals, February 21, 1911.

1. EVIDENCE: Bills from Books of Account: Books Best Evidence. A bill showing an itemized account of purchases and purporting to be a copy from the books of the seller is secondary evidence, and is not admissible in evidence in an action between the person against whom it was made out and another person, involving title to the goods therein described, where the books themselves are within the jurisdiction of the court, since the books are the best evidence.

155 App.—31

2. ———: **Books of Account.** Books of account are competent evidence, either when attested by the oath of one who has knowledge of the facts they evince, or as part of the *res gestae*, without such attestation, if the entries therein are shown to have been made contemporaneously with the transactions therein recorded and in the usual course of business.

3. **PAYMENT: Receipts: Conclusiveness: Evidence.** In a controversy between a vendor and vendee, a receipt given by the former to the latter is prima facie evidence of payment of the amount therein mentioned, but is not conclusive.

4. ———: ———: **Not Admissible Against Stranger: Evidence.** A receipt is not competent evidence of the payment therein acknowledged against a stranger to the transaction, being merely hearsay as to him.

5. **HUSBAND AND WIFE: Separate Property of Wife: Instructions.** In an action by a wife against a husband, involving title to personal property, an instruction that if the jury believe from the evidence that all or part of the property was purchased by plaintiff with money given to her by her husband, then the same, together with all income, increase and profits thereof, and all other money or property received from other sources, which she had earned by her own work, became and continued her separate property, and the fact that the husband used or cared for any or all of said property did not prove that the wife transferred the same to him, but the same remained her separate property, unless the jury found she had given an interest therein to her husband in writing, and that there was no evidence that such consent was given; and that if the jury found the facts to be as above, then the law is, that plaintiff was the owner of the property and entitled to the possession of same, is *held* to be a correct instruction, under the facts of the case.

6. ———: ———: ———: **Modification of Instruction: Harmless Error.** The modification of said instruction by striking out the clause, "that there was no evidence that the wife consented to her husband having any interest in the property," was harmless, although, as a matter of fact, there was no such evidence, since the fact there was no such evidence was as well known to the jury as to the court, and, besides, the theory was not advanced in the case that the husband had acquired any right to the property because he used or cared for the same.

7. **APPELLATE PRACTICE: Harmless Error: Statute.** Under sections 1850 and 2082, Revised Statutes 1909, the appellate court will disregard any error which does not affect the sub-

stantial rights of the adverse party, and will not reverse any judgment unless it believe error was committed against appellant, materially affecting the merits of the action.

8. **TRIAL PRACTICE: Offer of Proof: Made in Presence of Jury.** Where evidence was excluded and the attorney offering it thereupon made an offer for the purpose of incorporating the proposed evidence in the record for review on appeal, the trial court did not err in refusing to reprimand him, on motion of the adverse party, for making such offer of proof in the presence of the jury.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams*, Judge.

AFFIRMED.

*S. C. Rogers* for appellant.

(1)  The court erred in refusing to admit in evidence appellants' exhibits A, B, C, D, E and F, the bills received for the goods at time of purchase by appellant, and exhibit H, the receipt for the horse in evidence. Wells v. Hobson, 91 Mo. App. 379; Nelson v. Nelson, 90 Mo. 460; Milling Co. v. Walsh, 108 Mo. 277; Briggs v. Henderson, 49 Mo. 531; Bettes v. Magoon, 85 Mo. 580; Dreyer v. Dieckman, 131 Mo. App. 660.     (2)     The court erred in refusing to give the instruction as offered by appellant, and in giving same as modified by the court, and known as No. 5 given. R. S. 1909, sec. 8309; Ilgenfritz v. Ilgenfritz, 49 Mo. App. 127; Gilliland v. Gilliland, 96 Mo. 522; Schooler v. Schooler, 18 Mo. App. 69; State ex rel. v. Jones, 83 Mo. App. 151; Hurt v. Cook, 151 Mo. 416; Grocer Co. v. Ballenger, 137 Mo. 369; Abbott v. Trust Co., 130 S. W. 1120; Johnson v. Johnson, 173 Mo. 91; Sanguinett v. Webster, 127 Mo. 32; Siling v. Hendrickson, 193 Mo. 365; Bettes v. Magoon, 85 Mo. 580; Winn v. Riley, 151 Mo. 61; White v. Clasby, 101 Mo. 162; Rice, Stix & Co. v. Sally, 176 Mo. 107.     (3)     The court erred in permitting counsel for respondent to make prejudicial statements in the

presence and hearing of the jury over the objection and exception of appellant. Rice, Stix & Co. v. Sally, 176 Mo. 148; Haynes v. Town of Trenton, 108 Mo. 123; Mason v. Fourteen Min. Co., 82 Mo. App. 371.

*Frank H. Braden* and *John A. Talty* for respondent.

(1) The books themselves might have been competent evidence, and upon proof that they were destroyed or beyond the jurisdiction of the trial court, verified or other copies might have been admitted, although that question does not arise here, as neither one was offered or accounted for. Wright v. Railroad, 118 Mo. App. 392; 1 Greenleaf Ev., pp. 563 and 563e. Afflick v. Streeter, 136 Mo. App. 719. (2) Counsel for respondent did not make prejudicial statements in the presence and hearing of the jury during the trial. It was our duty, being met with an objection, to show and state to the court what we expected to prove, otherwise the "appellate court could not determine its materiality" in the event we had to appeal. McCormick v. City of St. Louis, 166 Mo. 315; McFern v. Gardner, 121 Mo. App. 1.

NORTONI, J.—This is a suit in replevin. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

It appears the parties were formerly husband and wife, but the marriage relation was dissolved by a decree of divorce recently before the institution of this suit in replevin. The subject-matter of the controversy is the household furniture, and a horse which the parties jointly used during the last four years of their married life. At the time the suit was instituted, the household furniture and horse were in possession of defendant, who was the prior husband, at the residence where they both formerly lived. Plaintiff, the former wife, asserts a claim to the property as owner and as though she is entitled to the exclusive possession thereof. On the other hand, defendant insists the property belongs to him be-

cause it was purchased with his money during their married life. The evidence tends to prove that defendant is a prosperous plumber who has made considerable money through plying his·trade, and plaintiff was employed by him as a stenographer about 1888 and 1889. In 1889, the parties were married and both seem to have attended diligently to the matter of making money. While defendant prosecuted his trade, in which he employed a number of men, plaintiff kept several boarders in their home and attended to the household duties of the wife. Plaintiff's evidence tends to prove that she made money of her own by keeping boarders and accumulated some, too, from bad accounts which her husband gave to her for collecting. She says, too, on numerous occasions her husband, defendant, presented her with money which she saved and accumulated through investments, etc. The parties formerly resided in Kansas City but afterwards removed to St. Louis where they commenced housekeeping. By the testimony of plaintiff, it appears she purchased the household furniture involved from Georgia-Stimson Company, a well-known furniture house in St. Louis, and the horse from another person, and paid therefor with her own separate means which she had accumulated as above stated. For defendant, the evidence is, that whatever means plaintiff had were furnished to her by him along at different times, not as gifts but merely for the purpose of investment and that all the furniture involved was purchased with his money. He says, too, that though plaintiff purchased the furniture from Georgia-Stimson Company and the horse from another party and made payment for the horse and for the major portion of the furniture, he made one payment of $500 on the furniture by his check, and this statement seems not to be seriously controverted. On the proof in the record, it may be said there is an abundance of evidence tending to establish plaintiff's right of recovery as though she purchased the property sued for with her own means and therefore owned it, and there is an abun-

dance of evidence as well in support of defendant's claim that, though plaintiff purchased the furniture, she did it for him and with his means and therefore he is the owner thereof. It is to be inferred from the proof that while defendant was engaged in his business, plaintiff made such purchases as were needed by both parties and conducted matters of that character as if she were the head of the house, with his consent. The jury found the issue for defendant as though he owned the property and had furnished the means to purchase it.

Plaintiff argues for a reversal of the judgment that the court erred in declining to permit her to introduce in evidence several bills of furniture made out in her name in 1904 and rendered to her by the Georgia- Stimson Company soon after the furniture was purchased. These bills purport to be copies from the books of the Georgia-Stimson Company from whom the furniture was purchased in St. Louis and are statements of the account of such purchases, item by item, after the transactions took place. Plaintiff urges the court should have received them in evidence as tending to prove her title to the household goods involved but we believe there was no error in excluding them on the ground that the books were the best evidence. Such bills purporting to be copies from the books are of course secondary evidence of the facts therein recited and the books themselves were within the jurisdiction of the court. This being true, they were properly excluded, for the reason the books were the best evidence and should have been produced, if it were desired to show from them that plaintiff purchased the property. Such books are competent, either when attested by the oath of the party who has knowledge of the facts they evince, or as of the *res gestae*, under an exception to the rule against hearsay, without such proof, if the entries therein are shown to have been made contemporaneously with the purchases, in the usual course of business; but copies are not competent when the books are convenient, as here. To render

such statements copied therefrom competent in the circumstances stated, the loss or destruction of the books or their otherwise being unavailable after diligent effort should be shown. [Anchor Milling Co. v. Walsh, 108 Mo. 277, 18 S. W. 904.] Such papers purporting to be statements copied from the books are self-serving and may be concocted, while the books themselves are authentic. And it is because of this the law requires the best evidence accessible. It is clear that such bills are incompetent in the circumstances of the case where the books and probably the saleman himself or the person who made the original entries is available. [Wright v. C. B. & Q. R. Co., 118 Mo. App. 392, 94 S. W. 555; 1 Greenleaf on Evidence (16 Ed.), secs. 563a and 563e.]

One of these bills was marked paid and signed by the Georgia-Stimson Company and this fact, of course, characterizes it as a receipt for the amounts set opposite the several items of furniture therein indicated. This, too, was rejected by the court over plaintiff's exception when offered in proof, and the same action was had with reference to a receipt signed by the party from whom the horse involved was purchased. The receipt as to the horse is of the ordinary character, properly dated, etc., and recites that plaintiff paid the owner thereof the amount therein mentioned for the horse.

It is urged the court should have permitted these receipts to be read in evidence at any rate, for they in themselves are indicative of title in her to the property. The proposition is no doubt true if the controversy were between plaintiff and the Georgia-Stimson Company, from whom the furniture was purchased, or the gentleman from whom the horse was acquired. In such circumstances, the receipt is prima facie evidence of payment of the amount therein mentioned but not conclusive. [23 Am. and Eng. Ency. Law (2 Ed.), 980, 981.] Nevertheless, both of these receipts were properly excluded here when sought to be introduced against the present defendant who was a stranger thereto be-

cause they impinged the rule against hearsay.  To re-
ceive such receipts in evidence against a stranger there-
to, such as this defendant, operates the substitution of
such *ex parte* statements made by the person executing
the receipts for the testimony under the sanction of an
oath and all of the advantages of cross-examination of
the parties executing the receipts.  [23 Am. and Eng.
Ency. Law (2 Ed.), 981;  Ford v.  Smith, 5 Cal.  314;
Lloyd v. Lynch, 28 Pa. St. 419; Lloyd v. Lynch, 70 Am.
Dec. 137; Ellison v. Albright, 41 Neb. 93.]

Because of the testimony that plaintiff purchased
the property with means which she had acquired through
the earnings of her separate labor and through dif-
ferent gifts of her husband, the court instructed as fol-
lows:

"The court instructs the jury that if you believe
and find from the evidence that all or part of the prop-
erty in controversy was purchased by plaintiff with
money which was given to her by her husband, then the
same, together with all income, increase and profits
thereof, together with all other money or property which
was received from other sources and which she earned
by her own work, became and continued her separate
property; and you are further instructed that the fact
that the husband used or cared for any or all of said
property, does not prove that the wife transferred same
to her husband, but the same remained her separate
property, unless the jury find she gave any interest in
said property to her husband in writing.  If you find
the facts to be as above, then the law is that plaintiff was
the owner of the property and entitled to the possession
of the same."

This instruction predicates on section 8309, Revised
Statutes 1909, which is parcel of the married woman's
act,    and    provides    substantially    that    personal
property   of   the   wife   shall   not   be   deemed   to
have   been   reduced   to   possession   of   the   hus-
band    by    his    use    and    care    thereof    but    the

same shall remain her separate property unless by assent in writing full authority shall be given by the wife to the husband to the contrary, etc. Counsel for plaintiff requested this instruction substantially as given but the court modified it by striking out of the request the following words which were included therein after the word, "writing," "and you are further instructed that there is no evidence in this case that such consent was given." We believe it would have been proper, for the court to have given this instruction as requested. [See State ex rel. Smith v. Jones, 83 Mo. App. 151.] But we perceive no prejudicial error in modifying it by striking out the words quoted for the jury knew as well as the court that there was no evidence in the case that plaintiff had given a written assent to defendant by which her claims to the property, if any, were surrendered. There was no suggestion of such a matter throughout the evidence nor was the theory presented that defendant acquired any rights to the property because he used or cared for the same, etc. Indeed, the issue sharply drawn throughout was as to whether plaintiff owned the property by virtue of having purchased it with her separate means or whether the means with which she purchased it were those of defendant and she acted for him in so doing. It is the command of the statute that the court shall, in every state of the action disregard any error or proceeding which shall not affect the substantial rights of the adverse party and that no judgment shall be reversed or affected by reason of such error or defect. [Sec. 1850, R. S. 1909.] Furthermore, by another statute, (sec. 2082, R. S. 1909) it is provided that no judgment shall be reversed unless the court shall believe error was committed on the trial against the appellant materially affecting the merits of the action. It is entirely clear the judgment should not be reversed for the mere failure of the court to direct the jury in this instruction that there was no evidence of the written assent of the wife in the case, for this was known as

well to the jury as to the court. The instruction as given is clear enough and correctly informs the jury of the substantive law and the rule of evidence on the subject. Besides, we believe the case would have been well enough instructed had this one been entirely omitted, for no such claim as the statute contemplates was asserted by defendant.

There is an argument advanced with respect of the failure of the court to reprimand counsel for plaintiff in making a statement of an offer of proof in the presence of the jury. This we have considered and regard without merit, for it appears nothing more was done than is usual on the trial when the court excludes evidence and the attorney makes an offer to the end of incorporating the proposed evidence in the record for review on appeal.

The opinion should not be unnecessarily extended Suffice to say we have examined the instructions given for defendant and find no error therein. The only issue in the case, a plain and simple one, was put to the jury under instructions eminently fair to both sides. On the proof, the jury was amply justified in finding the fact as it did. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.*, and *Caulfield, J.*, concur.